UNITED STATES DISTRICT COURT
for the
FOR THE DISTRICT OF MASSACHUSETTS

DAVID WILLIAMS, PRO SE,　　　　　　　)
　　　Plaintiff　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
VS.　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)　　**CIVIL ACTION NO. 04-10086-PBS**
NORMAN THERRIEN, DAVID STRINGHAM,　)
GERI CRISMAN, JOHN DOE, A/K/A NURSE　)
JEFF and JANE DOE, A/K/A NURSE JACKIE, )
　　　Defendants　　　　　　　　　　　　　　　)

## MEMORANDUM OF DEFENDANTS, NORMAN THERRIEN, DAVID STRINGHAM AND GERI CRISMAN, IN SUPPORT OF THEIR MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR ENTRY OF SUMMARY JUDGMENT

In this civil action, the plaintiff, David Williams ("Williams"), a pro se prisoner incarcerated within facilities operated by the Massachusetts Department of Correction ("DOC"), seeks monetary damages for purported civil rights violations allegedly committed by the defendants. In his Amended Complaint, Williams asserts that the defendants, Norman Therrien, David Stringham, and Geri Crisman[1], were deliberately indifferent to his medical needs, causing him to suffer physical harm. Despite these assertions, Williams has failed to state a cognizable claim upon which relief can be granted and, therefore, the defendants are entitled to either the dismissal of the Amended Complaint in the above-captioned action, or, in the alternative, the entry of summary judgment.

---

[1] Attached is an *Affidavit of Geri Crisman*, which the defendants incorporate herein pursuant to Fed. R. Civ. P. 10(c).

911749v1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an inmate who is currently, and was at all times relevant to his Amended Complaint, incarcerated at MCI-Cedar Junction, Walpole, Massachusetts, a prison facility maintained by the DOC.

Defendant Geri Crisman is a Registered Nurse and currently employed by the UMass Correctional Health Program ("UMass") as the Health Services Administrator ("HSA") at MCI-Old Colony Correctional Center. UMass has provided contractual medical care and treatment to inmates housed within the DOC since January 1, 2003. Between April 2003 and June 2003, defendant Crisman was one of three acting HSAs at MCI-Cedar Junction.

Defendant Therrien is currently employed by UMass as the HSA at NCCI-Gardner. Between April 2003 and June 2003, defendant Therrien was one of three acting HSAs at MCI-Cedar Junction.

Defendant Stringham is no longer employed by UMass. Between April 2003 and June 2003, defendant Stringham was one of three acting HSAs at MCI-Cedar Junction.

Plaintiff's allegations appear to arise out of a two-day period[2] at MCI-Cedar Junction, when he was confined to his cell for unknown reasons. During that time period, plaintiff was given his regularly prescribed narcotic medication, premixed with water, at the prescribed times. However, plaintiff refused to take his prescribed medication during this two-day period.

Prior to April 19, 2003, narcotic medication was given to prisoners in crushed form, unmixed with water. However, UMass staff became aware that some prisoners were stockpiling and hoarding the narcotic medications when administered in this form. The defendants were concerned that inmates could acquire poisonous quantities of the narcotic medications, through hoarding, and cause harm to themselves or others in the prison community.

---

[2] Statements made by plaintiff to date indicate that the referenced two-day period was April 19 and 20, 2003.

2

911749v1

To combat the impending health and safety issues within the institution, the defendants instituted an emergency remedy, on a temporary basis, to reduce an inmate's opportunity to stockpile and hoard narcotic medication. The defendants instructed that all narcotic medication must be pre-mixed with water before being administered to the inmate. This emergency remedy remained in place until all prisoners requiring narcotic medication were moved to locations within the prison where medication could be crushed and mixed with water in the inmates' presence. When the emergent security and health concerns no longer existed, the premixing of narcotic medication was immediately ceased.

Although plaintiff was never denied his prescribed medication by any the named defendants, plaintiff claims that premixing his regularly prescribed, narcotic, medication with water was an effective denial of medical treatment, resulting in cruel and unusual punishment, in violation of the Eight Amendment of the United States Constitution.

Plaintiff commenced this action on January 14, 2004.[3] On February 4, 2004, the named defendants filed their respective answers thereto. Shortly thereafter, the Court Ordered a scheduling conference to be held on March 29, 2004. Despite the impending scheduling conference, plaintiff filed a Motion to Amend the Complaint. The Motion was allowed and the Amended Complaint was filed on March 10, 2004. The named defendants filed their respective answers thereto on March 25, 2004.

---

[3] Plaintiff originally filed a complaint in Norfolk Superior Court on or about July 2, 2003, containing claims identical to those in the present action. On or about September 15,, 2003, plaintiff filed a *Motion to Amend the Complaint*, which was allowed on October 21, 2003. Plaintiff also propounded extensive discovery requests on the defendants, to which the defendants responded completely and in a timely manner. However, on or about November 11, 2003, for reasons unknown to the defendants, plaintiff filed a *Motion to Dismiss Without Prejudice for Filing Within the United States District Court*.

3

911749v1

Following the Court Ordered scheduling conference and after discussing the factual circumstances surrounding plaintiff's allegations, the Court (Saris, J.) issued an Order barring discovery and instructing the defendants to file a Motion to Dismiss by April 1, 2004.

For the reasons set forth below, the defendants move for dismissal of all claims against them, or, in the alternative, for entry of summary judgment.

## ARGUMENT

I. THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A COGNIZABLE CLAIM UPON WHICH RELIEF CAN BE GRANTED.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In Estelle, the Supreme Court articulated the standard to be applied to a claim by a prisoner that his constitutional rights were violated by the failure of prison officials to provide adequate medical services:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint, that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, <u>a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs</u>. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-106 (emphasis added). Accordingly, under Estelle, it must be demonstrated that the specific acts or omissions relative to a prisoner's medical treatment constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Id.; see Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). "Where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was

4

911749v1

intentional or evidence of acts or omissions so dangerous with respect to health or safety, that a defendant's knowledge of a large risk can be inferred" dismissal is appropriate. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

In a fairly recent pronouncement, the United States Supreme Court reaffirmed Estelle, this time expressly holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S., 825, 837 (1994). Farmer thus equates deliberate indifference with criminal recklessness.

As illustrated by both the holding in Farmer as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in Estelle strictly and have defined "deliberate indifference" narrowly. See e.g., Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1980). In Ferranti, the court held that where medical attention was given to an inmate, disagreement as to the appropriate course of medical treatment or the source of treatment did not constitute "deliberate indifference" and as such was not actionable as a violation of the Eighth Amendment. Ferranti, 618 F.2d at 890. Similarly, in Layne, the court held that even substandard medical treatment would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate. Layne, 657 F.2d at 474; Langton v. Commissioner of Correction, 34 Mass. App. Ct. 564 (1993)(alleged conditions under which inmates tested for tuberculosis did not constitute "deliberate indifference to serious medical needs").

As set forth above, assuming a plaintiff can satisfy the first prong of the <u>Estelle</u> standard by a showing of his "serious medical needs," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment proscription against the infliction of cruel and unusual punishment. Echoing the Supreme Court's rationale in <u>Estelle</u>, the Court of Appeals for the Sixth Circuit has said: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Neither an inadvertent failure to provide adequate care nor negligent treatment or diagnosis is actionable under 42 U.S.C. §1983, as the offending conduct must be wanton. In order to establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. <u>DesRosiers v. Moran</u>, 949 F.2d 15,19 (1st Cir. 1991). Where, as in this case, the dispute concerns not the absence of medical care, but the choice of a certain course of treatment, the plaintiff must prove that the treatment was so clearly inadequate that it shocks the conscience or that it amounts to a refusal to provide essential care. See <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991); <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985); <u>Layne v. Vinzant</u>, 657 F.2d 468, 474 (1st Cir. 1981).

There is no factual combination that could arise from the Amended Complaint that would come anywhere near to meeting the extremely high burden of establishing deliberate indifference by the defendants to the plaintiff's medical needs. The plaintiff's claims are grounded upon the assumption that administering his prescribed narcotic medication, pre-mixed with water, for two days, is tantamount to a deliberately indifferent denial of medical treatment. <u>See</u>, Amended Complaint, ¶¶ 11, 20, 32-42. However, plaintiff states in the Amended Complaint that he was at

least offered some medical care in the form of medication pre-mixed with water. See, Amended Complaint, ¶¶ 11, 13, 15. Plaintiff further states in the Amended Complaint that the pre-mixing of narcotic medications with water was a temporary, institution-wide policy. See, Amended Complaint, ¶¶ 11, 15. No further factual inquiry is necessary here as the plaintiff does not allege that the defendants' conduct is "repugnant to the conscience of mankind" or is "an unnecessary and wanton infliction of pain." See Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). To the contrary, the Amended Complaint plainly suggests that despite circumstances requiring a temporary alteration in the administration methods of narcotic medications to inmates, the defendants made a reasonable effort to continue plaintiff's medical treatment in an uninterrupted manner. See, Amended Complaint, ¶¶ 11, 13, 15, 24, 25. Where, as in this case, there is absolutely no evidence of "treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional...," dismissal is appropriate. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

## CONCLUSION

For all of the foregoing reasons, the defendants, *Norman Therrien, David Stringham and Geri Crisman*, respectfully request that their Motion to Dismiss, or, in the Alternative, for the Entry of Summary Judgment be **ALLOWED**.

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on the 1st day of April, 2004.

_____
Charles M. Urso

Respectfully submitted,

The Defendants,
NORMAN THERRIEN, DAVID STRINGHAM AND GERI CRISMAN,

By their attorneys,
MORRISON, MAHONEY & MILLER, LLP

_____
Bruce R. Henry, BBO #230880
Charles M. Urso, BBO #647748
250 Summer Street
Boston, MA 02210
(617) 439-7500

911749v1