UNITED STATES DISTRICT COURT
for the
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID WILLIAMS, PRO SE,<br>    Plaintiff<br><br>VS.<br><br>NORMAN THERRIEN, DAVID STRINGHAM,<br>GERI CRISMAN, JOHN DOE, A/K/A NURSE<br>JEFF and JANE DOE, A/K/A NURSE JACKIE,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 04-10086-PBS** |

### AFFIDAVIT OF GERI CRISMAN

I, Geri Crisman, on oath hereby depose and state the following:

1. I am a Registered Nurse and currently employed by the UMass Correctional Health Program ("UMass") as the Health Services Administrator ("HSA") at the Massachusetts Correctional Institute – Old Colony Correctional Center. UMass has provided medical care and treatment to inmates within the Massachusetts Department of Correction, on a contractual basis, since January 1, 2003.

2. Between early April, 2003, and June, 2003, I was an acting HSA at MCI-Cedar Junction, Walpole, Massachusetts.

3. Between early April, 2003, and June, 2003, Norman Therrien and David Stringham were also employed by UMass in the capacity of acting HSA at MCI-Cedar Junction.

4. I am familiar with Mr. Williams' allegations in this matter and have personal knowledge of the care and treatment he received during my tenure as the acting HSA at MCI-Cedar Junction.

5. Prior to April, 2003, medication, including narcotic medication, was administered to inmates in crushed form. The crushed medication was not premixed with water or any other liquid.

6. In early April, 2003, the UMass medical staff became aware that some inmates were stockpiling and hoarding the unmixed, crushed medication rather than taking the prescribed dosages at the prescribed times. The practice of stockpiling and hoarding medications occurred more frequently with inmates who were prescribed narcotic medications.

7. Between April and May of 2003, Mr. Williams was prescribed narcotic medication.

8. The practice of stockpiling and hoarding narcotic medication raised immediate fears that inmates could acquire poisonous quantities of the narcotic medications and cause harm to themselves or others in the prison community.

9. As a temporary measure to remedy the potential security breaches and the health and safety issues created by the stockpiling and hoarding practice, medication was crushed and pre-mixed with water before being administered to the inmate. This temporary emergency measure was ceased, immediately, once all prisoners requiring narcotic medication were moved to locations within the prison where medication could be crushed and mixed with water in the inmates' presence, and the emergent security and health concerns no longer existed.

10. Mr. Williams was subject to this temporary emergency measure for only two days when he was confined to his cell on April 19 and 20, 2003. During those two days, Mr. Williams continued to receive all of his prescribed medications at the prescribed times.

11. During my tenure as acting HSA at MCI-Cedar Junction, there were no instances, documented or otherwise, where Mr. Williams was denied his prescribed medications, at the prescribed times, by any of the defendants named in this matter.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS __1__ DAY OF _April_, 2004.

_[signature]_ HSA
GERI CRISMAN, R.N.

I hereby certify that a true and complete copy of the above document was served upon the attorney of record, for each party by mail on the _1st_ day of _April_, 2004.

_[signature]_

3