UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DAVID WILLIAMS, pro se,  )
                        )
                        )
                        )
   -vs-                 )
                        )                CIVIL ACTION NO. 04-10086-PBS
NORMAN THERRIEN, DAVID STRINGHAM, )
GERI CRISMAN, JOHN DOE A/K/A NURSE )
JEFF and JANE DOE, A/K/A NURSE    )
JACKIE,                 )
       Defendants       )
                        )

RECEIVED
Clerk's Office
USDC, Mass.
Date 4-15-04
By ____Cur6____
Deputy Clerk

## DAVID WILLIAMS COUNTER-AFFIDAVIT

I, David Williams, depose and hereby state the following:

1.  I am the plaintiff in the above-entitled action presently incarcerated at Massachusetts Correctional Institution located in South Walpole, Massachusetts, which is operated by the Department of Correction within the state of Massachusetts.

2.  The former Commissioner of Corrction Michael T. Maloney duly promulgated for the Department of Correction rules and regulations establishing guidelines for the management, prescription and distribution of controlled substances, prescribed medications, and over-the-counter medications in all department facilities titled Pharmacy and Medications, 103 DOC 661. See Exhibit

3.  The responsibilty of the implementation and monitoring of this departmental policy during the times relevant in this action were solely the responsibilities of Health Service Division Director Susan J. Martin and former Superintendent Peter E. Allen of Massachusetts

.1.

Correctional Institution at Cedar Junction.

4. I, have a known history of being allergic to several types of medications that causes sever allergic reactions that require immediate medical treatment that could be fatal if not immediately attendant.

5. On or about November 23, 1998, approximately at 10:30 pm, I received a liquid substance instead of my crushed medication as proscribed by the doctor and was told by the nurse that it was the same as the prescription medication ordered by the doctor only it had been pre-mixed within the Health Service Unit prior to me receiving it along with an allergy pill (Benadryl) which I then consumed.

6. On or about November 23, 1998, approximately around 11:15, I, started experiencing unusual discomfort that I had not experienced before and I immediately called out for the officer in the cell block who came to my cell asking what the problem was I explained to him that I was experiencing unusual pain and a difficulty in breathing and that I was having an alleric reaction to the medication I had just taken I was then taken by wheelchair to the Health Service Unit were my vital signs where taken and monitored while the on call doctor was called by the nurse I was then place on oxygen and given an increase dosage of Benadryl around 1:00 am when my vital signs returned back to normal I was returned back to my Unit.

7. On or about November 25, 1998, I requested to see the doctor who had prescribed the medication for me and upon meeting medical staff I was then asked what the medication looked like I explained to medical staff that it was a cloudy liquid substance and not the regular crushed medication I normal receive but I was told by the nurse that it was

.2.

a new policy by the Health Service Unit Administrator and at that point the medical staff person stated to me that they were going to speak with the H.S.U. Administrator Carla Cesario about this problem since the medication was to be delivered in a crushed pill form and then water added at my cell door.

8. When medical staff returned to the office I was told specifically that the H.S.U. Administrator has been notified of my medical condition and that all my medical charts will effectively point out that this medication must be delivered crushed and administered as policy requires, medical staff further stated that it could have been possible that a cross contamination had taken place during the wholesale preparation of inmates control substances medications and hopefully the problem has been resolved but the ultimately responsibility lies with me, if the medication did not conform to the prescription as order by the doctor and administered by the policy and now that I was aware of the possibility of having an allergic reaction and if a situation did occur where there is a problem a doctor is on call every night that medical staff can summons if there is a problem.

9. On or about December 19, 1998, I sent a letter to former Commissioner Michael T. Maloney, regarding my having an allergic reaction seeking assurances that I would not have to go through another painful situation that I had previous experienced.

10. On or about February 19, 1998, I received a letter from former Health Service Division Director John D. Noonan reassuring me that medical staff have been informed and that the policy of the Department of Correction in regards to controlled substance medication should

eliminate any concerns of this incident from occurring again.

10. The Department of Correction policy 103 DOC 661, Pharmacy and Medication effective on December 1, 2000, canceled all previous department policy statements, bulletins, directives, order, notices, rules and regulations regarding the management of controlled substances, prescribed medications and over-the-counter medications which were inconsistent with this policy.

11. The policy includes sections outlining the accepted practices for the administration of controlled substances medication that accommodates inmates health, safety and security concerns located in each section within MCI-Cedar Junction an provides and unlikely scenario for him or any other inmate to acquire or retain other than the one prescription dosage presently being administered.

12. I have been given my control substance medication within the Hospital Service Unit, East Wing Unit, West Wing Unit, West Wing Segregation Unit and Awaiting Action Status since 1998 and at all times prior to this incident the procedure stated within regulation 103 DOC 661 was adhered to at all times by both the Health Service Unit and the officers working within the Department of Correction policy.

13. On site Health Service Administrators do not have the authority to change a Department of Correction policy temporally or permanently without the authorization of the Superintendent of the facility for security reasons or by the Health Service Division Director.

14. Health Service Unit medical staff do not conduct cell searches looking for illegal possession of or abundance supply of control substance

or over-the-counter medication this action is entirely the responsibility of the Department of Correction Inner Primeter Security under the supervision of the director of security and superintendent of the facility.

15. I requested on April 19, 2003, that Nurse Jeff call the doctor on call because of my concerns with the administering of this liquid substance that was not my prescription medication by the doctor orders he refused this request and left with the liquid substance without returning with my medication (control substance).

16. I, requested on April 20, 2003, that Nurse Jackie call the doctor on call because of my concerns with the administering of this liquid substance that was not my prescription medication (control substance) ordered by the doctor she refused this request and left with the liquid substance without returning with my (control substance) medication.

17. Ms. Geri Crisman was not present during the **alleged** preparation of my control substance medication on these dates that these incidents took place and has no personal knowledge of how my control substance medication was handle by the defendants or conditions or guidelines that were followed in this preparation and therefore her statement is based upon derivative knowledge.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS <u>12th</u> DAY OF <u>APRIL</u>, 2004.

                                                  *David Williams, pro se*
                                                  David Williams, pro se
                                                  P.O. Box 100,
                                                  So. Walpole, MA 02071

## WILLIAMS V. THERRIEN, STRINGHAM, et al.

### List of Exhibits

Exhibit  1.   Letter/D.O.C. Health Service Division, John D. Noonan
              pgs. 1.

Exhibit  2.   Letter/ D.O.C. Health Service Division, Susan J. Martin
              pgs. 1.

Exhibit  3.   D.O.C. Grievance Appeal Form/Superintendent Peter E. Allen
              pgs. 1.

Exhibit  3.   Legal Notice/Acting Health Services Administrator Geri
              Crisman, RN.  pgs. 1.

Exhibit  4.   Correctional Medical Services/UMASS Physician's Order.
              pgs. 3.

Exhibit  5.   Drug Formulary D.O.C. 103 DOC 661.
              pgs. 1.

Exhibit  6.   D.O.C. Clinical Contract Personnel and Role of D.O.C
              Health Services. pgs. 2,

Exhibit  7.   MCI-Cedar Junction Procedure for 103 DOC 661, Pharmacy and
              Medications. pgs 11.

Exhibit  8.   Massachusetts General Law Chapter 268 section 6A.
              pgs. 1.

Exhibit  9.   Boretti v. Wiscomb, 930 F.2d 1150 (6th Cir. 1991).
              pgs. 2.

Exhibit 10.   Helling v. McKinney, 509 U.S. 25, 113 S.Ct 2475 (1993).
              pgs. 3.